# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30288

United States Court of Appeals
Fifth Circuit

**FILED**

January 26, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

     Plaintiff - Appellee

v.

JEREMY HATLEY,

     Defendant - Appellant

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 6:16-CR-64-1

Before REAVLEY, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Sheriff's Department Sergeant Jeremy Hatley pled guilty to violating 18 U.S.C. § 242, deprivation of rights under color of law, and 18 U.S.C. § 1001, making a false statement. After receiving a within-Guidelines sentence of 36 months, he appeals, contending the district court erred in its Guidelines calculations, made various procedural errors, and imposed a substantively unreasonable sentence. We VACATE and REMAND for resentencing.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30288

FACTUAL AND PROCEDURAL BACKGROUND

On April 29, 2011, Sergeant Jeremy Hatley, a K-9 handler, went to the chapel of the Iberia Parish Jail ("IPJ") for a shakedown of a prisoner. The chapel, which was not under the jail's video surveillance, was the setting for a violent beating of a pre-trial detainee, S.S. Hatley sat in silence in the chapel as he saw his fellow officers assault S.S. Without intervening, Hatley watched a narcotics agent place a flashlight between his legs, stand before S.S., and force S.S. to mimic performing fellatio on the flashlight. The agent pushed the flashlight so far into S.S.'s mouth that S.S. began to choke. During the assault, S.S. was kneeling, restrained, and compliant. Hatley believed he had a duty to intervene but did nothing.

Four years later, the FBI interviewed Hatley as part of an investigation of this and other beatings of prisoners in the chapel. During the interview, Hatley knowingly stated he had never witnessed any inmates abused in the chapel. Later, Hatley corrected his statement. Ultimately, twelve defendants were charged with the abuses, including Sheriff Louis Ackal. Ackal was acquitted after a five-day jury trial. Although several other defendants testified at Ackal's trial, Hatley did not.

In 2016, pursuant to a plea agreement, Hatley pled guilty to two counts: (1) a misdemeanor violation of 18 U.S.C. § 242 and (2) a felony violation of 18 U.S.C. § 1001. Regarding the Section 242 count, the bill of information to which he pled provided that "the Defendant chose not to intervene as other officers assaulted S.S. in the chapel of the IPJ, despite having the opportunity to do so, and despite knowing that he had a duty to do so." Hatley's plea further provided that he willfully deprived S.S. "of the right to be free from the use of excessive force amounting to punishment by a law enforcement officer" while acting under the color of law. Regarding the Section 1001 count, Hatley

No. 17-30288

admitted in his plea that "he knowingly and willfully made false statements and representations in a matter within the jurisdiction of the FBI[.]"

The presentence investigation report ("PSR") calculated the base offense level for the Section 242 offense as 14. U.S.S.G. § 2H1.1, which applies to violations of Section 242, provides that sentencing courts should use the offense level from the Guideline applicable to the underlying offense if it results in the highest base offense level. Because the underlying offense was an aggravated assault, which pursuant to U.S.S.G. § 2A2.2 has a base offense level of 14, the PSR determined that 14 was the base offense level for the Section 242 violation. The PSR then recommended a four-point enhancement for use of a deadly weapon, a three-point enhancement for bodily injury, a six-point enhancement because the violation was committed under color of law, and a two-point adjustment because the victim was physically restrained. The total offense level in the PSR for the Section 242 offense was 29.

The PSR calculated the base offense level for the Section 1001 violation as 23, using U.S.S.G. § 2J1.2 as the applicable Guideline and making no adjustments. The PSR grouped the two counts as closely related, and, following U.S.S.G. § 3D1.3(a), determined the offense level for the group was 29. Hatley then received a two-point deduction for acceptance of responsibility and a one-point deduction for his assistance. The total offense level for the two counts was thus 26. This offense level combined with Hatley's criminal history category of I resulted in a Guidelines range of 63–78 months, which, due to the statutory maximum that the each count carried, was reduced to a maximum of 72 months.

Before sentencing, Hatley filed eleven written objections to the PSR. The Government also filed a Section 5K1.1 motion requesting a reduction based on Hatley's substantial assistance. The seven-level reduction for his substantial

No. 17-30288

assistance would result in a suggested offense level of 19 and a Guidelines range of 30–37 months.

These filings were addressed by the district court at sentencing. The district court first ruled on the written objections. The nature of the objections will be discussed later as relevant. Objections 1, 2, and 3 were overruled for two reasons: "I remember your testimony in the *Ackal* trial and the reasons stated by the probation office."[1] The district court overruled Objections 4, 5, 6, 7, and 10; noted Objections 8 and 11; and said that the issue raised in Objection 9 had been corrected. The district court then heard argument from Hatley's counsel and a statement from Hatley. After adopting the factual findings contained in the PSR, the district court imposed a sentence of six months for Count 1 and 30 months for Count 2. The district court ordered the sentences to run consecutively. In explaining the sentence, the district court stated: "I selected this based on your personal history and personal characteristics and involvement in the current offense as well as the 5K motion and your service to your country." After sentencing, Hatley filed a motion for reconsideration of the sentence, which the district court denied. Hatley timely appealed.

## DISCUSSION

The reasonableness of a district court's sentencing decision is reviewed for an abuse of discretion. *United States v. Johnson*, 648 F.3d 273, 276 (5th Cir. 2011). This court employs a two-step review. *United States v. Robinson*, 741 F.3d 588, 598 (5th Cir. 2014). First, we determine whether the district court committed procedural errors, such as miscalculating the Guidelines

---

[1] The district court stated that the second and third objections were "overruled for the same reasons" as the first objection.

range or failing to consider the Section 3553(a) factors. *Id.* Procedural errors are reviewed for harmless error. *Id.* Next, we evaluate the substantive reasonableness of the sentence. *Id.* During both steps, factual findings are reviewed for clear error and interpretations or applications of the Sentencing Guidelines are reviewed *de novo. Id.* at 598–99. If a defendant fails to preserve an issue, this court will review for plain error. *United States v. Dominguez-Alvarado,* 695 F.3d 324, 327 (5th Cir. 2012). In order for an error to be reversible under this standard, the "defendant must show a clear or obvious error that affects his substantial rights" and even then, "our court has discretion to correct that error, and generally will do so only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Mudekunye*, 646 F.3d 281, 287 (5th Cir. 2011).

We follow a similar framework to analyze the issues raised by Hatley: we look to first the Guidelines calculation, then other procedural issues, and finally, the substantive reasonableness of the sentence imposed.

## I.    *Guidelines calculation*

Hatley makes several arguments regarding the Guidelines calculation. First, he contends that the district court erred in using aggravated assault as the underlying offense to determine the base offense level for his Section 242 deprivation-of-rights violation. Relatedly, he argues the district court erred in applying the dangerous-weapon enhancement, the bodily-injury enhancement, the color-of-law enhancement, and the physical-restraint enhancement. Hatley also disputes the district court's denial of his request for a minor role adjustment. Regarding his Section 1001 conviction for making a false statement, he claims the district court applied the wrong Guideline and thus

No. 17-30288

selected the wrong base offense level.  Finally, according to Hatley, the district court erred in grouping his Section 1001 and Section 242 offenses together.

### a.  Guidelines calculation for the Section 242 offense

Hatley's arguments regarding the Guidelines calculation for his Section 242 offense turn, in large part, on whether it was appropriate to use the aggravated assault of S.S. as the underlying offense for his failure to intervene. Hatley argues it was error to use the aggravated assault Guideline as the underlying offense because of his limited involvement.  Relatedly, he contends the enhancements for use of a dangerous weapon, for bodily injury, and for restraining the victim were erroneous because Hatley only pled guilty to failing to intervene, not to the aggravated assault.  Hatley also claims that the color-of-law enhancement should not apply, that the enhancement for restraining the victim does not apply in the jail context, and that the district court erred in not applying a minimal role reduction.

First is Hatley's claim that it was error to use aggravated assault as the underlying offense.  In response, the Government argues "there is no distinction . . . between a willful failure to prevent an assault under color of law and an assault committed under color of law."  The Government also argues the PSR correctly found that Hatley was accountable for the conduct in the aggravated assault under U.S.S.G. § 1B1.3(a)(1), which states the relevant conduct includes any acts the defendant aided and abetted or foreseeable acts "within the scope of the jointly undertaken criminal activity."

Hatley pled guilty to a violation of Section 242 in Count I, which stated that Hatley, while acting under color of law, "willfully deprived S.S., a pre-trial detainee, of the right . . . to be free from the use of excessive force[.]"  Section 2H1.1 applies to convictions under Section 242.  To determine the base offense

level, it instructs sentencing courts to apply the greatest base offense level from among the following options:

> (1) the offense level from the offense guideline applicable to any underlying offense; (2) 12, if the offense involved two or more participants; (3) 10, if the offense involved (A) the use or threat of force against a person; or (B) property damage or the threat of property damage; or (4) 6, otherwise.

U.S.S.G. § 2H1.1.    At issue here is whether the district court correctly considered the "underlying offense" to be aggravated assault.

We conclude Hatley is criminally liable for the aggravated assault. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989).    When a police officer knows of a constitutional violation and does nothing to prevent the violation, he may be found liable under Section 242 for the substantive offense.    *See United States v. McKenzie*, 768 F.2d 602, 605 (5th Cir. 1985).    Here, Hatley knew what was happening and knew that he had a duty to stop it, yet he did nothing.    Because Hatley is criminally liable for the aggravated assault, we do not reach the alternative argument that Hatley would also be accountable for the aggravated assault under U.S.S.G. § 1B1.3(a)(1).

Hatley also argues that because he did not participate in the aggravated assault, it was error for the district court to apply the related enhancements and adjustments to his sentence.    Because Hatley is liable for his failure to protect S.S. from the aggravated assault, the aggravated assault section of the Guidelines applies.    The district court did not err in finding that the bodily-injury enhancement, the use of a dangerous-weapon enhancement, or the physical-restraint adjustment applied.

No. 17-30288

Hatley also argues the physical-restraint enhancement is inapplicable altogether in the jail context. This argument is foreclosed by a prior decision holding that the physical-restraint enhancement applies even when the victim was lawfully restrained if the perpetrator took advantage of that restraint. *United States v. Clayton*, 172 F.3d 347, 353 (5th Cir. 1999).

We also reject Hatley's argument that the color-of-law enhancement should not apply because he did not commit an aggravated assault. This argument fails because acting under the color of law was an element of the Section 242 offense to which Hatley pled guilty.

Last, Hatley argues he should have received a minimal-role reduction because his only charge was failure to intervene and therefore his role in the underlying offense was minimal. Hatley references the statement in the PSR that the "probation office has no information to indicate the defendant, Hatley, played an active role in the aggravated assault of S.S.[.]" "[T]o qualify as a minor participant, a defendant must have been peripheral to the advancement of the illicit activity." *United States v. Miranda*, 248 F.3d 434, 446–47 (5th Cir. 2001). The party seeking an adjustment to the sentence must show by a preponderance of the evidence that the adjustment is warranted. *Id.* at 446. The district court's decision not to credit Hatley a minimal role reduction was supported by the PSR's finding that there was a "lack of information to suggest that the defendant was substantially less culpable than the average participant exhibiting similar conduct." The PSR found that Hatley had not met his burden, and the district court agreed. The district court did not err in failing to award Hatley a minimal role reduction.

The district court did not err in using the Guideline for aggravated assault for the Section 242 count, nor did it err in its application of the related enhancements.

8

No. 17-30288

### b. Guidelines calculation for the Section 1001 violation

Hatley argues the district court erred in calculating the base offense level for his Section 1001 violation for making a false statement. The Guidelines treat Section 1001 violations two different ways. U.S.S.G. App. A; *see also* U.S.S.G. § 2J1.2 cmt. For violations having a statutory maximum of eight years (violations relating to terrorism or sex offenses), Section 2J1.2 applies. *Id.* For all other violations, Section 2B1.1, with a base offense level of six, applies. U.S.S.G. § 2B1.1(a). But Section 2J1.2's cross-reference provision states that if the offense involved obstructing the investigation of a criminal offense, Section 2X3.1 for accessory after the fact should be used, which provides that the base offense level is six levels lower than the underlying offense level. U.S.S.G. § 2J1.2(c)(1).

Here, the underlying offense was the Section 242 violation, which received an offense level of 29. The Section 1001 violation, pursuant to Section 2J1.2 and Section 2X3.1, received an offense level of 23. Hatley argues the district court erred in applying this Guideline because his Section 1001 count only had a five-year statutory maximum. In response, the Government argues that any error would not affect the Guidelines range if the district court did not err in the Guidelines calculation for the Section 242 offense.

We have found error to apply Section 2J1.2 when the facts alleged in the indictment did not establish the applicability of that Guideline. *See United States v. Griego*, 837 F.3d 520, 522–23 (5th Cir. 2016).

Here, the presentence addendum concluded that Section 2J1.2 should be applied because Hatley's conviction involved obstruction in a criminal offense, which is mentioned in the cross-reference section of that Guideline. It does not address the fact that Hatley's conviction was not covered by Section 2J1.2, which according to its commentary applies to convictions of Section 1001

9

offenses with an eight-year statutory maximum. Hatley's Section 1001 violation carried a five-year statutory maximum. Because his sentence did not carry an eight-year statutory maximum, applying Section 2J1.2 along with Section 2X3.1(a) was error. *See Griego*, 837 F.3d at 523.

We agree with the Government that this error had no effect on Hatley's sentence. The district court determined the counts were closely related pursuant to U.S.S.G. § 3D1.2. Accordingly, under Section 3D1.3 the offense level for the group is determined by identifying the highest offense level of the counts. U.S.S.G. § 3D1.3(a). With the offense level for the Section 242 count calculated at 26, the offense level for the group was 26, regardless of whether the base offense level for the Section 1001 charge was 23 or 6. Because we are vacating and remanding for other reasons, this error should be corrected.

### c. *Grouping the counts as closely related offenses*

Hatley argues the district court erred in grouping his Section 242 and Section 1001 charges as closely related offenses under Section 3D1.2, which provides that offenses are closely related if they "involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." The Guidelines anticipate this scenario, though, and guide our analysis. The commentary to Section 3C1.1 provides that if a defendant is convicted of a count of obstruction of justice as well as an offense to which the obstructive conduct applied, the count for obstruction should be counted as closely related to the underlying offense under Section 3D1.2. U.S.S.G. § 3C1.1 cmt. n.8. Here, the underlying offense is the Section 242 charge. The obstruction count arose out of Hatley's false statements regarding the conduct for which he was ultimately charged under

Section 242.  As a result, the district court did not err in grouping the counts together under Section 3D1.2.

## II.    Other Procedural Errors

Next, we turn to the other procedural errors alleged by Hatley.  He claims the district court erred in failing to explain its consideration of the Section 3553(a) factors.   Relatedly, he argues he did not receive an individualized sentence.  He also challenges the district court's decision to run the sentences consecutively.  Last, he contends the district court did not give him credit for his substantial assistance.

### a.  Consideration of the Section 3553(a) factors

Hatley argues the district court erred when it failed "to state or mention on the record that it had considered the §3553(a) factors, and it failed to articulate any analysis of the §3553(a) factors."  In response, the Government argues the district court did sufficiently consider the Section 3553(a) factors.  Because Hatley did not preserve this error for review, we review for plain error.

Section 3553(a) requires a sentencing court to consider the following factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed[;]" (3) "the kinds of sentences available;" (4) "the kinds of sentence and the sentencing range established for" the offense; (5) any relevant policy statements from the United States Sentencing Commission; (6) avoiding unwarranted disparities among similarly situated defendants; and (7) whether restitution is necessary.  18 U.S.C. § 3553(a).  Further, the district court must offer an explanation of the sentence that is sufficient to enable appellate review.  *Gall v. United States*, 552 U.S. 38, 50 (2007).  We have found error where the district court ignored

the defendant's argument for a downward departure and failed to give any reasons for its sentence. *See United States v. Mondragon-Santiago*, 564 F.3d 357, 363 (5th Cir. 2009). We do not, though, require the district court to provide "robotic incantations that each statutory factor has been considered." *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006) (quoting *United States v. Lamoreaux*, 422 F.3d 750, 756 (8th Cir. 2005)). "If the sentencing judge exercises her discretion to impose a sentence within a properly calculated Guideline range, in our reasonableness review we will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines." *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005).

The district court listened to statements from counsel and from Hatley himself before imposing the sentence. Then, explaining its sentence, the district court stated, "I selected this based on your personal history and personal characteristics and involvement in the current offense as well as the 5K motion and your service to your country." We do not require a district court to explicitly cite Section 3553(a), but the record must reflect its consideration of the factors. The district court referenced the language from the first Section 3553(a) factor. Further, because the district court imposed a within-Guidelines sentence, it was not required to provide an extensive analysis at sentencing. Because the record reflects the district court considered the Section 3553(a) factors, we find no error.

### b. *Individualized sentence*

We start by pointing out that Hatley's sentencing hearing was held simultaneously with the sentencing of at least six of the other defendants, each of whom played different roles in the IPJ abuses. A district judge must be sure that what he is recalling is related to the particular defendant being sentenced

as opposed to some other defendant.  This is made more difficult by the process of group sentencing.  Hatley argues he did not receive an individualized sentence because the district court misidentified him.  Although he did not contemporaneously object, Hatley preserved this error by filing a post-sentencing motion for reconsideration.  Post-sentencing motions for reconsideration can preserve sentencing errors.  *See United States v. Watkins*, 450 F.3d 184, 185 (5th Cir. 2006).  Rule 35 motions are appropriate for "arithmetical, technical, or other clear error[s.]"  FED. R. CRIM. P. 35(a).  They are not intended to provide a means to re-argue discretionary decisions.  *See United States v. Ross,* 557 F.3d 237, 242 (5th Cir. 2009).  Here, the alleged error is reliance on a clearly erroneous fact.

In arguing the district court misidentified him, Hatley references the district court's statement that Hatley testified at Sheriff Ackal's trial.  It is undisputed that Hatley did not testify at that trial.  The district court referenced Hatley's testimony as one of two reasons that it was overruling several of Hatley's objections to the PSR.  In response, the Government argues that other statements from the sentencing (such as statements about Hatley's military service) reveal he received an individualized sentence.  Further, the Government explains that statement could have been in reference to testimony *about* Hatley rather than testimony *from* Hatley.

Sentencing courts "must make an individualized assessment based on the facts presented."  *Gall*, 552 U.S. at 50.  The Court in *Gall* included "selecting a sentence based on clearly erroneous facts" in a list of "significant procedural error[s.]"  *Id.* at 51.  Even if we determine the sentencing court erred, though, we must also determine whether it would have imposed the same sentence notwithstanding the error.  *United States v. Johnson*, 648 F.3d 273, 278 (5th Cir. 2011).  The proponent of the sentence has the burden to show

13

that district court would have imposed the same sentence even without the consideration of the erroneous fact.  *See id.*

We have required resentencing before where the district court erred in its reliance on facts about the defendant.  *Id.*  In *Johnson*, we held that the district court erred in considering Johnson's arrest record (without more) at sentencing even after Johnson offered explanations for the arrests besides his guilt.  *Id.*  There, the Government failed to establish that the district court would have imposed the same sentence without the error.  *Id.* at 279.  We could "not definitively rule out that the arrests were considered in sentencing."  *Id.*  We also rejected the argument that the error might not have affected the length of the sentence because, after reviewing the record, we lacked "the certainty we are required to have."  *Id.*  Importantly, we stated that in our review of the district court's decision, "we must rely on the explanation the district court actually gave; it is not enough to hypothesize some other explanation that might render the sentence reasonable."  *Id.* at 279–80.

Based on our review of the sentencing transcript, we cannot accept the argument that the erroneous recollection might not have affected the sentence with the certainty that we require.[2]  Although there are explanations for the statement other than misidentification, we are not permitted to speculate or hypothesize about what the district court meant.  We must rely on the

---

[2] Hatley's appeal is distinguishable from two other appeals from his co-defendants, which also made misidentification arguments.  One case was recently affirmed by this court.  *See United States v. Bergeron*, 17-30280, 2017 WL 6547640, at *1 (5th Cir. Dec. 21, 2017).  There, the defendant argued that the disparity between his conduct and the sentence received suggested misidentification.  To support his argument, he claimed that there was a lack of statements made by the sentencing court specific to him and that the sentencing court's misidentification of Hatley gave weight to the argument that Bergeron too was misidentified.  A similar but less developed argument was raised in *United States v. Broussard*, No. 17-30298.  There were no facts in either case to suggest the district court had misidentified the defendant.

statements made by the district court.  Here, the erroneous recollection was one of two reasons that the district court gave for overruling at least three objections to the PSR.  Like in *Johnson*, resentencing is required here because we cannot definitively rule out that the district court did not rely on its erroneous recollection that Hatley testified at the *Ackal* trial.  We vacate his sentence and remand.

### c. *Ordering the terms to run consecutively*

Hatley argues the district court erred in ordering the terms to run consecutively without analysis of the Section 3553(a) factors.  Because Hatley did not preserve this error, the issue is reviewed for plain error.  18 U.S.C. § 3584(a) permits multiple terms to run either concurrently or consecutively.  Here, the district court imposed a within-Guidelines sentence, which is presumed reasonable.  *See United States v. Candia*, 454 F.3d 468, 473 (5th Cir. 2006).  The only basis for Hatley's argument is his claim that the district court failed to consider the Section 3553(a) factors, which we reject.  It was thus not plain error to impose consecutive terms.

### d. *Failure to credit for substantial assistance*

Hatley argues the district court did not credit him for substantial assistance after granting the Government's Section 5K1.1 motion, and even if it did, he did not receive the proper credit because the Guidelines range was incorrectly calculated.  Because Hatley did not preserve this error, we review for plain error.

Hatley's offense level in the PSR was 26 and his resulting Guidelines range was 63–72 months.  After the district court granted the Government's Section 5K1.1 motion for a seven-level reduction, the new Guidelines range

was 30–37 months.  Hatley's sentence of 36 months was within the Guidelines range as modified by granting the Government's motion.  Even though the district court did not explicitly state the result of granting the Section 5K1.1 motion during sentencing, the district court's written reasons reflect the credit. The district court did not err because the Section 5K1.1 motion was granted and credited to Hatley's sentence.

## III.    *Substantive Reasonableness*

Hatley argues his sentence is substantively unreasonable in light of the nature of his conduct and in light of the disparity between his sentence and his co-defendants.    Because we have found procedural error warranting resentencing, we do not consider Hatley's additional arguments.  *Cf. United States v. Nguyen*, 854 F.3d 276, 280 (5th Cir. 2017) ("If the district court's decision is procedurally sound, we then consider the substantive reasonableness of the sentence.")

The portion of Hatley's motion to supplement the record that concerns certain sentencing transcripts is granted.  The remainder of the motion is denied.

VACATED and REMANDED.

No. 17-30288

REAVLEY, Circuit Judge, dissenting:

I would not repeat this sentence. The judge's error joined his reasons for denying Hatley's first three objections to the PSR. The objections were correctly overruled as a matter of law. The judge's error had no effect. When the judge came to the sentence, he explained carefully its basis. Compare this with *United States v. Johnson,* 648 F.3d 273, 275 (5th Cir. 2011) where the judge linked explicitly the erroneous fact to the sentence given.